**FILED & ENTERED**

**NOV 28 2016**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY bakchell  DEPUTY CLERK**

**<u>NOT FOR PUBLICATION</u>**

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re: | Case No. 2:14-bk-11510-RK |
| eCLARIS, INC**.** | Chapter 7 |
| Debtor. | **MEMORANDUM DECISION ON MOTION OF CARL W. COOPER TO CLARIFY THE COURT'S PRIOR ORDER ON SALE OF ESTATE ASSETS** |

Pending before the court is the Motion of Carl W. Cooper ("Cooper") to

Clarify the Court's Prior Order on Sale of Estate Assets (the "Motion"), ECF 66, filed

on August 23, 2016, requesting that the court clarify its Order Granting [Trustee's]

Motion to Confirm Sale of Estate's Right, Title and Interest in Property of the Estate

and to Approve Settlement of Claims, ECF 38, filed and entered on April 17, 2015.

Through the Motion, Cooper seeks a determination that the settlement agreement

that he entered into with Richard K. Diamond, the Chapter 7 Trustee ("Trustee") for

1  the bankruptcy estates of Debtor eClaris, Inc. ("Debtor") and eClaris Software, Inc.

2  ("Related Debtor"), to purchase the assets of Debtor and Related Debtor, eClaris

3  Software, Inc. and settle claims (the "Settlement Agreement"), ECF 30, included a

4  derivative cross-claim of breach of fiduciary duty against Debtor's principal,

5  Jacques Nack Ngue ("Ngue" or "Nack"), ECF 66 at 3.

6         Having considered the moving and opposing papers and the oral arguments

7  of the parties, and the other papers and pleadings before the court, the court

8  determines that the Motion should be granted because the express contractual

9  language of the Settlement Agreement between the Trustee and Cooper is unclear

10  and ambiguous as to the treatment of the cross-claim asserted by Cooper against

11  Ngue as a derivative claim on behalf of Debtor for breach of fiduciary duty in the

12  state court action, *eClaris Inc. v. Omega Equipment, et al.,* Case No. GC050458

13  (Superior Court of California, County of Los Angeles). as part of the settlement

14  between the Trustee and Cooper.

15        The Motion asks the court to construe the Settlement Agreement, a contract

16  between Cooper and the Trustee for sale of assets of Debtor and Related Debtor

17  and settle claims, to include the sale of Debtor's derivative claim against Ngue for

18  breach of fiduciary duty, which presents a matter of contractual interpretation.

19        Because the Settlement Agreement is governed by California law, the court

20  applies the law of contracts of California to the Settlement Agreement.  Settlement

21  Agreement attached as Exhibit 4 to Cooper's Supplemental Submission, ECF 76,

22  filed on September 27, 2016, Exhibit 4, ¶ 21 at 9-10.  "When considering a question

23  of contractual interpretation, the court applies the following rules.  'A contract must

24  be so interpreted as to give effect to the mutual intentions of the parties as it

25  existed at the time of contracting, so far as the same is ascertainable and lawful.'

26  ([Cal.] Civ. Code, § 1636.)  "The language of a contract is to govern its

27  interpretation, if the language is clear and explicit, and does not involve an

28

2

1   absurdity." (Civ. Code, § 1638.)  "When a contract is reduced to writing, the

2   intention of the parties is to be ascertained from the writing alone, if possible…."

3   (Civ. Code, § 1639.)"  *WYDA Associates v. Merner*, 42 Cal.App.4th 1702, 1709

4   (1996).

5        When the language of the contract is ambiguous, may parol or extrinsic

6   evidence be admitted.  "Parol or extrinsic evidence is admissible to resolve an

7   ambiguity.  In such cases, the court engages in a two-step process: 'First, the court

8   provisionally receives (without actually admitting) all credible evidence concerning

9   the parties' intentions to determine 'ambiguity,' i.e., whether the language is

10  'reasonably susceptible' to the interpretation urged by a party.  If in light of the

11  extrinsic evidence the court decides the language is 'reasonably susceptible' to the

12  interpretation urged, the extrinsic evidence is then admitted to aid in the second

13  step-interpreting the contract."  *Id.* at 1710, *citing inter alia, Garcia v. Truck Ins.*

14  *Exchange,* 36 Cal.3d 426, 435 (1984); *Winet v. Price,* 4 Cal.App.4th 1159, 1165

15  (1992); [Cal.] Code Civi. Proc., § 1856(g).

16       Cooper argues that the Settlement Agreement should be interpreted to

17  include the sale of the derivative claim against Ngue in the sale by the Trustee of

18  "Debtors' right, title and interest in and to the eClaris Assets and the eClaris

19  Software Assets (collectively, the 'Property'), including, without limitation . . . ."

20  Reply Memorandum of Carl W. Cooper of Points and Authorities in Support of

21  Motion to Clarify the Court's Prior Order on Sale of Estate Assets, filed on

22  September 6f, 2016, ECF 72 at 2.  In opposition, Ngue and Debtor argue that the

23  Settlement Agreement should be interpreted not to include the derivative claim

24  against Ngue in the sale by the Trustee because the derivative claim against Ngue

25  was not expressly listed in the definitions of the eClaris Assets and eClaris

26  Software Assets in the Agreement.  Opposition of Debtor eClaris, Inc., and Jacques

27  Ngue to Carl W. Cooper's Motion to Clarify the Court's Prior Order on Sale of

28

1  Estate Assets; Declaration of Jacques Ngue in Support thereof, filed on August 30,

2  2016, ECF 71 at 7.

3       The court's order approving the Settlement Agreement and sale of assets by

4  the Trustee to Cooper, ECF 38, filed and entered on April 17, 2015, authorized the

5  Trustee "to sell, on the terms stated in the [Settlement] Agreement attached to the

6  Trustee's Declaration appended to the Motion, the estate's right, title and interest in

7  the property identified in the Agreement (the 'Property'), to Carl W. Cooper."  ECF

8  38 at 2.

9       The operative provisions of the Settlement Agreement for the transaction

10  between the Trustee and Cooper were in the Stipulation Section of the Settlement

11  Agreement, including the sale of assets in Paragraph 9 which stated as follows: "9.

12  Sale of Assets.  The Trustee will file with the Court a motion to sell, pursuant to

13  Bankruptcy Code § 363 of all of the Debtors' right, title and interest in and to the

14  eClaris Assets and the eClaris Software Assets (collectively, the 'Property'),

15  including without limitation:  . . . [various categories of intellectual property rights].";

16  and (2) the settlement and release of claims by the Trustee and Cooper in

17  Paragraph 13 which stated as follows:

18

19      13.  Releases.  a. Upon Bankruptcy Court approval of this Agreement, in
consideration for the provisions of this Agreement, the Trustee, for himself,
20  the Debtors, their respective estates, and their respective successors,
predecessors, [etc.] (the 'Trustee Releasing Parties') does hereby fully and
finally compromise and settle, and forever release, remise, relieve, waive,
21  relinquish and discharge any and all claims, complaints, rights, manner of
action or actions, cause or causes of action, suits, debts, [etc.], which the
22  Trustee Releasing Parties, or any of them, ever had, now have, or may
claim to have against Cooper and Omega, or any of them, [etc.] (the
23  'Trustee [Cooper/Omega] Released Parties'), or any of them, now accrued
or hereafter accruing, except for any claims arising out of the enforcement
24  of rights, obligations, and duties arising out of this Agreement.

25  b. Upon Bankruptcy Court approval of this Agreement, in consideration for
the provisions of this Agreement, the Cooper and Omega, for himself and
26  itself, and each of their respective successors, predecessors, [etc.] (the
'Cooper/Omega Releasing Parties') does hereby fully and finally
27  compromise and settle, and forever release, remise, relieve, waive,
relinquish and discharge any and all claims, complaints, rights, manner of

28

1  action or actions, cause or causes of action, suits, debts, [etc.], which the
2  Cooper/Omega Releasing Parties, or any of them, ever had, now have, or
   may claim to have against the Trustee and the Debtors (the 'Trustee
3  Released Parties'), or any of them, now accrued or hereafter accruing,
   except for any claims arising out of the enforcement of rights, obligations,
   and duties arising out of this Agreement.

4  c.  The Parties hereby acknowledge that it is their intention that the releases
   set forth above shall be effective as a full and final release of and a bar with
5  prejudice to each and every claim as forth above that the Trustee Releasing
   Parties and the Cooper/Omega Releasing Parties (collectively, the
6  'Releasing Parties') have or had against the Trustee Released Parties and
   the Cooper/Omega Released Parties (collectively, the 'Released Parties').
7  In connection with such waiver and relinquishment, the Parties acknowledge
   that their attorneys may hereafter discover facts different from or in addition
8  to the facts that they now know or believe to be true with respect to the
   subject matter of this Agreement, but that it is their intention to hereby fully,
9  finally, absolutely, and forever release any and all claims released above,
   which now do exist, may exist or heretofore have existed between them,
10 and that in furtherance of such intentions the release as given herein by the
   Parties, shall be and remain in effect as a full and complete release of the
11 claims released above, notwithstanding the discovery of any such different
   or additional facts.
12

13 Settlement Agreement attached as Exhibit 4 to Cooper's Supplemental

14 Submission, ECF 76, filed on September 27, 2016, Exhibit 4, ¶ 9 at 2-4 and ¶ 13 at

15 6-8.

16      The terms "eClaris Assets" and "eClaris Software Assets" are specifically

17 described in the Recitals Section of the Settlement Agreement.  Settlement

18 Agreement attached as Exhibit 4 to Cooper's Supplemental Submission, ECF 76,

19 filed on September 27, 2016, Exhibit 4, ¶ 3 at 1.  Paragraph 3 of the Settlement

20 Agreement in the Recitals Section stated:

21

22      Among the assets listed in the eClaris bankruptcy schedules are the
        following (the 'eClaris Assets'):

23      a.  Shares in eClaris Software;

24      b.  Claims against Omega and Cooper for Declaratory Relief, Intentional
            Interference with Prospective Economic Advantage and Breach of
25          Fiduciary Duty, pursuant to that certain lawsuit entitled, eClaris Inc. v.
            Omega Equipment, et. al., Los Angeles Superior Court Case No.
26          GC050458 (the 'Omega Lawsuit'); and

27      c.  Trademarks for 'eClaris' and 'Classify, Process & Review' (collectively,
            'eClaris IP').
28

5

1  Settlement Agreement attached as Exhibit 4 to Cooper's Supplemental

2  Submission, ECF 76, filed on September 27, 2016, Exhibit 4, ¶ 3 at 1.  Thus, the

3  "eClaris Assets" were defined in the Settlement Agreement as these three

4  separately listed categories of property, a., b., and c.  *Id.*  The eClaris Assets were

5  similarly described in the Trustee's motion to approve the Settlement Agreement.

6  The Trustee's Notice of Motion and Motion to Confirm Sale of Estate's Right, Title

7  and Interest in Property of the Estate and to Approve Settlement of Claims;

8  Memorandum of Points and Authorities; Declaration of Richard K. Diamond in

9  Support thereof, ECF 30, filed on February 11, 2015, ¶ 3 at 6.

10       Paragraph 4 of the Settlement Agreement in the Recitals Section stated:

11  "Among the assets listed in the eClaris Software bankruptcy schedules are the

12  following (the 'eClaris Software Assets'): a.  Certain intellectual property identified

13  as 'Phigrid Software'; and b. Certain intellectual property identified as 'System and

14  Method for Controlling Access to Electronic Data (Patent Pending).'"  Settlement

15  Agreement attached as Exhibit 4 to Cooper's Supplemental Submission, ECF 76,

16  filed on September 27, 2016, Exhibit 4, ¶ 4 at 1-2.  Thus, the "eClaris Software

17  assets" were defined in the Settlement Agreement as these two separately listed

18  categories of property, a., b. and c.  *Id.*  The eClaris Software Assets were similarly

19  described in the Trustee's motion to approve the Settlement Agreement.  The

20  Trustee's Notice of Motion and Motion to Confirm Sale of Estate's Right, Title and

21  Interest in Property of the Estate and to Approve Settlement of Claims;

22  Memorandum of Points and Authorities; Declaration of Richard K. Diamond in

23  Support thereof, ECF 30, filed on February 11, 2015, ¶ 4 at 6.

24       Paragraph 5 of the Settlement Agreement in the Recitals Section stated:

25  "Cooper and Omega filed a cross-complaint in the Omega Lawsuit, and between

26  them, they have asserted claims against the Debtors [i.e., Debtor eClaris, Inc., and

27  Related Debtor, eClaris Software, Inc.] for Breach of Contract, Conversion,

28

6

1  Inspection of Books and Records, Breach of Fiduciary Duty and Involuntary

2  Dissolution of Corporation (the 'Cross-Claims')."  Settlement Agreement attached

3  as Exhibit 4 to Cooper's Supplemental Submission, ECF 76, filed on September 27,

4  2016, Exhibit 4, ¶ 5 at 2.  The Cross-Claims were similarly described in the

5  Trustee's motion to approve the Settlement Agreement.  The Trustee's Notice of

6  Motion and Motion to Confirm Sale of Estate's Right, Title and Interest in Property

7  of the Estate and to Approve Settlement of Claims; Memorandum of Points and

8  Authorities; Declaration of Richard K. Diamond in Support thereof, ECF 30, filed on

9  February 11, 2015, ¶ 5 at 6.  However, as indicated by the actual cross-complaint

10  of Cooper and Omega, not all of the causes of action between them and Debtor

11  eClaris, Inc., were cross-claims against Debtor eClaris, Inc., but also, cross-claims

12  against Ngue, which were derivative claims through Debtor eClaris, Inc.  Third

13  Amended Verified Cross-Complaint of Omega Equipment Leasing Co., and Carl W.

14  Cooper, versus eClaris, Inc., Jacques Nack Ngue and Roes 1 through 20, Case

15  No. GC 054458 (Superior Court of California, County of Los Angeles), filed on

16  December 24, 2013, attached as Exhibit 2 to Cooper's Supplemental Submission,

17  ECF 76, filed on September 27, 2016.  This Cross-Complaint had seven causes of

18  action: the first through fourth causes of actions against Debtor eClaris, Inc., and

19  Roes 1 through 20, were for breach of lease (two causes of action), breach of

20  implied-in-law contract and conversion, the fifth cause of action against Debtor

21  eClaris, Inc., Ngue and Roes 1 through 20 was to enforce right of inspection of

22  books and records of eClaris, Inc., pursuant to California Corporations Code §

23  1601, 1603 and 1604, the sixth cause of action against Ngue and Roes 1 through

24  20, but against eClaris, Inc., nominally, was for breach of fiduciary duty by Ngue as

25  to his obligations of trust, loyalty, good faith and due care to eClaris, Inc., and its

26  shareholders, and the seventh cause of action against Ngue and Roes 1 through

27  20, but against eClaris, Inc., nominally, was for involuntary dissolution of eClaris,

28

1  Inc., based on alleged management by Ngue and his alleged breaches of his

2  obligations of trust, loyalty, good faith and due care to eClaris, Inc., and its

3  shareholders.  *Id.*

4

5         Paragraph 11 of the Settlement Agreement in the Stipulation Section stated:

6         Cooper agrees, as part of the Consideration for the releases to be granted
hereunder the settlement of the Cross-Claims, to make a lead bid of $10,000
7  for the Property (the 'Lead Bid') and the Trustee has accepted the Lead Bid
by Cooper as an opening bid for the Property.  Cooper understands that the
8  Trustee will seek other financially qualified bidders who may potentially be
interested in acquiring some or all of the Property.  The Trustee agrees that
9  the bid procedures to be utilized for any sale of the Property shall call for a
minimum bid increment of $1,000 and that any bid accepted over the Lead
10  Bid would have to be a minimum of $11,000.  Cooper shall deliver to the
Trustee a check for the full amount of the Lead Bid concurrently with the
11  execution of this agreement (the 'Deposit').  The Trustee shall hold the
Deposit until either the sale of the Property to Cooper has been approved by
12  the Court or the Trustee accepts the bid of another bidder as the winning bid
for the Property.  Should Cooper be the winning bidder, the amount of his
13  winning bid shall be allocated 50% for the eClaris Assets and 50% for the
eClaris Software Assets.  Should Cooper not be the winning bidder, the
14  $10,000 Deposit shall be returned to him within five (5) business days of the
Trustee's acceptance of the bid of another bidder as the winning bid.
15

16  Settlement Agreement attached as Exhibit 4 to Cooper's Supplemental

17  Submission, ECF 76, filed on September 27, 2016, Exhibit 4, ¶ 11 at 5.

18         The Settlement Agreement between the Trustee and Cooper was not self-

19  executing, but required approval of this court pursuant to Federal Rule of

20  Bankruptcy Procedure 9019.   To obtain the necessary court approval of the

21  Settlement Agreement, the Trustee filed his motion to confirm the sale of the

22  Property to Cooper and to approve the settlement of claims with Cooper.  The

23  Trustee's Notice of Motion and Motion to Confirm Sale of Estate's Right, Title and

24  Interest in Property of the Estate and to Approve Settlement of Claims;

25  Memorandum of Points and Authorities; Declaration of Richard K. Diamond in

26  Support thereof, ECF 30, filed on February 11, 2015.

27

28

1   In the Trustee's declaration in support of his motion to confirm sale of

2   property to Cooper and approve settlement of claims, the Trustee described the

3   transaction with Cooper for which court approval was sought as follows:

4

5          8.   Cooper has agreed to purchase, and I have agreed to sell to
       Cooper the estates' right, title and interest in the eClaris Assets and the
       eClaris Software Assets (collectively, the "Property"), "as is and "where is,"
6      subject to all liens, claims and encumbrances for $10,000 cash.   As further
       consideration for the sale, Cooper, Omega and I shall provide each other with
7      mutual general releases with respect to the claims and the Cross-Claims in
       the Omega Lawsuit.   The terms of the sale are summarized in the Notice
8      portion of this pleading and are set forth in full in the [Settlement] Agreement
       attached to the Trustee's Declaration . . . .
9

10  Declaration of Richard K. Diamond, attached to the Trustee's Notice of Motion and

11  Motion to Confirm Sale of Estate's Right, Title and Interest in Property of the Estate

12  and to Approve Settlement of Claims; Memorandum of Points and Authorities;

13  Declaration of Richard K. Diamond in Support thereof, ECF 30, filed on February

14  11, 2015, ¶ 8 at 15.   The Trustee in his declaration further explained his intent in

15  entering into this transaction:

16

17         10.  I am informed that Cooper, the buyer, was a creditor who provided
       financing to the Debtor to create and market the technology.   Accordingly, he
       has a proprietary interest in the property that I believe propelled him to make
18     the subject offer.   In addition, Cooper has an interest in my providing a
       release of the pending claims, which will save Cooper in legal fees in
19     disposing of that matter.   As discussed in greater detail below, I have
       analyzed the claims in the Omega Lawsuit and believe that they are of
20     inconsequential value and benefit to the estate, such that but for this sale, I
       would either abandon the claims or leave them un-administered.
21                                        . . . .

22         13.  I understand, based upon information and belief, that the dispute
       between the Debtor and Cooper/Omega is as follows:  Cooper was the father-
23     in-law of the Debtor's principal.   Cooper, either individually or through his
       company, Omega, purchased equipment and leased it to the Debtor.   The
24     Debtor alleges that in one such transaction, Cooper/Omega in fact provided
       unsecured financing rather than a lease of the equipment.   The Debtor
25     attempted to sell the company but the sale could not be completed in light of
       a UCC-1 Financing Statement recorded by Cooper/Omega.   The Debtor
26     contends that the UCC-1 filing was fraudulent and sued Cooper/Omega for
       Intentional Interference with Prospective Economic Advantage and Breach of
27     Fiduciary Duty.   Cooper/Omega cross-claimed for Breach of Contract,

28

1    Conversion, Inspection of Books and Records, Breach of Fiduciary Duty and
      Involuntary Dissolution of Corporation.

2        14.    I have investigated the subject lawsuit and have taken an
3    extensive 341(a) examination of the Debtor.  Based thereon, and in light of
      the Cross-Claims, I believe that the claims against Cooper/Omega are of
4    inconsequential value or benefit to the estate, absent the sale/settlement set
      forth herein.  I would have no means to pursue said claims and I do not
5    believe that I would be able to locate counsel to take the case on a
      contingency.    Accordingly, the proposed settlement, which will provide
6    $10,000 to the estates, is fair and reasonable and in the best interests of the
      estates.

7

8    *Id.,* ¶¶ 10, 13 and 14 at 15-16.

9        The transactional documents for the sale of the assets of Debtor eClaris, Inc.

10   and Related Debtor eClaris Software, Inc., to Cooper and the settlement and

11   release of all claims between the Trustee and Cooper and his company, Omega,

12   were meant to resolve all disputes between these parties, the transactional

13   documents, through the sale of the assets of Debtor and Related Debtor, including

14   the litigation assets, i.e., the claims in the Omega Lawsuit, and the settlement and

15   mutual release of all claims between the parties.  The Trustee stated in his

16   declaration in support of the sale and compromise with Cooper that he had

17   investigated the claims in the Omega Lawsuit and determined that they had

18   inconsequential value or benefit to the estate, absent the sale to and settlement

19   with Cooper, and that he had no means to pursue the claims, and that but for the

20   sale to Cooper, he would abandon the claims or leave them un-administered.

21   Thus, the Trustee contemplated the sale/settlement transaction with Cooper would

22   transfer any and all rights in the Omega Litigation to Cooper, though the

23   transactional documents, notably, the Settlement Agreement, did not expressly

24   refer to the derivative claim that Cooper on behalf of Debtor eClaris, Inc., had

25   against Ngue for breach of fiduciary duty with Debtor being a nominal defendant.

26   Based on this provisionally received credible extrinsic evidence of the parties'

27   intentions to determine ambiguity, the language of the Settlement Agreement to sell

28

1  the eClaris Assets to Cooper is reasonably susceptible to the interpretation urged

2  by Cooper, and thus, may be admitted in aid in the second step of interpreting the

3  Settlement Agreement as a contract.  *WYDA Associates v. Merner*, 42 Cal.App.4th

4  at 1709-1710 (citations omitted).

5       The lack of a specific reference to the derivative claim in the Settlement

6  Agreement does not mean that the Trustee intended to exclude that claim from the

7  sale/settlement transaction because there is no such express exclusion of that

8  claim from the transaction in the documents, and the documents indicate that there

9  would have been no reason to exclude such claim from the transaction because the

10  Trustee represented to the court that the Debtor's rights in the Omega Lawsuit

11  were of inconsequential value or benefit to the estate, that the only value they had

12  were to Cooper in purchasing such rights and that the Trustee did not intend to

13  make use of such rights since he intended to abandon or leave them un-

14  administered but for the sale to Cooper.   Thus, the court determines that the lack

15  of specific reference to the derivative claim in the Settlement Agreement makes the

16  Agreement does not render the contract unambiguous as to the treatment of the

17  derivative claim, and the court may admit parol or extrinsic evidence to interpret the

18  contract between the Trustee and Cooper in the Settlement Agreement as to give

19  effect to the mutual intentions of these parties as it existed at the time of

20  contracting.

21       As parol or extrinsic evidence of contractual intent of the Trustee and

22  Cooper for the Settlement Agreement, Cooper offered the Trustee's declaration in

23  support of his motion to reopen this bankruptcy case.  Declaration of Richard K.

24  Diamond, attached to Motion of Carl W. Cooper to Reopen Chapter 7 Case (Ex

25  Parte), etc., ECF 63, filed on July 1, 2016.  In the Trustee's declaration, he stated:

26

27       My intent under the Settlement Agreement was to sell to Mr. Cooper all of the
         assets of the eCLARIS estate and the eCLARIS SOFTWARE, Inc. estate,
         including, but not limited to, the Breach of Fiduciary Duty claim asserted as a

28

1
2
cross-claim by Mr. Cooper against Mr. Ngue in the Omega Lawsuit.  It was not my intent under the Settlement Agreement to release the Breach of Fiduciary Duty claim asserted against Mr. Ngue and eCLARIS as a nominal defendant.

3

4   *Id.,* ¶ 7 at 2.   The court considers that this parol or extrinsic evidence of the parties'

5   contractual intent to be probative of their intent because it is completely consistent

6   with the Trustee's contemporaneous expressions of his contractual intent in his

7   motion to approve the sale/settlement with Cooper as discussed above.  The

8   Trustee was selling the assets of Debtor and Related Debtor, including the estates'

9   litigation rights in the Omega Lawsuit, because Cooper wanted to buy them and the

10  Trustee determined after an extensive investigation that such rights were assets

11  having inconsequential value or benefit to the estates other than through Cooper's

12  offer to buy them for the agreed price.

13       In this regard, the court has considered the arguments of Ngue and Debtor

14  in opposition to the motion that the plain language of the Settlement Agreement

15  which did not expressly refer to the derivative claim governs and that the parties'

16  contractual intent was to exclude that asset.  The court does not accept the

17  opposition because there is no evidence in the record to indicate that the Trustee

18  intended to exclude the derivative claim from the transaction since the transactional

19  documents are silent on any such exclusion and to the contrary, the exclusion of

20  the asset would have been contrary to the Trustee's representations to the court in

21  his motion for approval of the sale/settlement transaction with Cooper that the

22  estates' litigation rights or claims in the Omega Lawsuit were of inconsequential

23  value or benefit to the estate and that he would not realize any value from the

24  claims, but for the sale to Cooper.  The evidence discussed herein is

25  uncontroverted and indicates that the Trustee was not excluding any litigation claim

26  in the Omega Lawsuit from Cooper as argued by the opposition.  Thus, the court

27  concludes that the derivative claim was sold to Cooper in the sale/settlement

28

1  transaction previously approved by the court in this case, and the motion should be

2  granted to so clarify the prior order approving the transaction by further order to be

3  issued by the court.  *See, e.g., In re Chinichian,* 784 F.2d 1440, 1443 (9th Cir.

4  1986)(as a court of equity, the bankruptcy court can modify a prior order as long as

5  no intervening right has become vested in reliance thereon)(citation omitted).  The

6  court finds on this record that there was no intervening right vested in reliance

7  thereon as the opposition papers do not describe circumstances to establish this.

8  *See,* Opposition of Debtor eClaris, Inc., and Jacques Ngue to Carl W. Cooper's

9  Motion to Clarify the Court's Prior Order on Sale of Estate Assets; Declaration of

10  Jacques Ngue in Support thereof, filed on August 30, 2016, ECF 71 at 9-13 (Ngue

11  Declaration saying in hindsight that he would have offered money for the derivative

12  claim during the overbidding process for the Settlement Agreement approval if the

13  claim had been included in the Agreement, but the court gives no credence to this

14  testimony, given the uncontroverted evidence of the intent of the contracting parties

15  that they meant to completely resolve their disputes and claims through approval of

16  the Settlement Agreement).

17       For the foregoing reasons, IT IS HEREBY ORDERED as follows:

18    1. The court grants Cooper's Motion to Clarify the Court's Prior Order on Sale

19       of Estate Assets.

20    2. Cooper is ordered to submit a proposed final order consistent with this

21       memorandum decision within 7 days of entry of this memorandum decision.

22  ///

23  ///

24

25

26

27

28

1    3.  The further hearing on the Motion scheduled on November 29, 2016 at 3:00

2        p.m. is vacated.  No appearances are required on November 29, 2016.

3    **IT IS SO ORDERED**.

4                                                ###

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23   Date: November 28, 2016

24                                              _____
                                               Robert Kwan
                                               United States Bankruptcy Judge
25

26

27

28